IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IVAN DAVILA, #M55646, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 25-cv-00168-SMY |
| | ) |
| JOHN BARWICK, | ) |
| DR. PERCY MYERS, | ) |
| DENTIST NATHAN CHAPMAN, | ) |
| NURSE JAMES, | ) |
| LT. J. DUDEK, | ) |
| SGT. ENGSTROM, | ) |
| C/O JOHN DOE 1-3, | ) |
| KITCHEN SUPERVISORS JOHN DOE 4-6, | ) |
| and WEXFORD HEALTH SOURCES, INC., | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

Plaintiff Ivan Davila, an inmate in the custody of the Illinois Department of Corrections currently incarcerated at Pinckneyville Correctional Center, filed a Complaint under 42 U.S.C. § 1983 for constitutional deprivations stemming from allegedly inadequate post-operative care and nutrition following removal of a wisdom tooth in July 2024. He seeks monetary and injunctive relief.[1] (Doc. 1). The Complaint is now subject to screening under 28 U.S.C. § 1915A, which requires this Court to dismiss any portion that is legally frivolous or malicious, fails to state a claim for relief, or seeks money damages from an immune defendant. *Id*.

### **The Complaint**

Plaintiff makes the following allegations in the Complaint (Doc. 1, pp. 7-15): During his

---

[1] Plaintiff seeks a verbal apology and a "restraining order against defendants so [he] will never have to see them again and won't ever have to deal with the mistreatment by them ever again." (Doc. 1, p. 15).

1

incarceration at Pinckneyville, Plaintiff's lower left wisdom tooth was extracted at an offsite facility on July 8, 2024. *Id*. at 7. Following surgery, he was given a bag containing gauze, a syringe, antibiotics, pain medication, and post-operative care instructions. Plaintiff was denied appropriate care and nutrition following his return to prison from July 8-17, 2024. *Id*.

Dr. Nathan Chapman, the prison's dentist, examined Plaintiff when he returned from surgery and noted that his wound was stitched closed. The dentist prescribed ibuprofen (400 mg), cephalexin (500 mg), and Tylenol 3. When Plaintiff requested a soft diet, Dr. Chapman said he could "eat whatever [he] wants" but warned him to "stay away from the surgical site" when chewing. Plaintiff again requested a soft diet, but the dentist said, "[N]o, you will be fine." *Id*.

That night, Plaintiff received a meal for the first time since 5:00 p.m. on July 7, 2024. When he opened his mouth, Plaintiff "felt and heard a loud rip" that coincided with sudden and severe pain. Plaintiff took his medication and went to bed without eating on July 8, 2024. *Id*.

When he awoke the next morning, Plaintiff's face and throat were swollen and sore. The nurses observed him struggling to open his mouth and swallow pills. He could not speak and ate nothing on July 9, 2024. *Id*. at 7-8.

Plaintiff complained of weakness without food to Nurse James on July 10, 2024. *Id*. at 8. Nurse James disregarded his complaint and gave him more pain medication. Plaintiff became distressed about his inadequate nutrition and medical care, and requested a crisis intervention. He vomited and fainted the same evening, and his cellmate had to care for him. *Id*.

Dr. Chapman met with Plaintiff on July 11, 2024. He reported feeling unwell and hungry because he had not eaten since July 7, 2024. He complained of swelling and pain that prevented him from swallowing, spitting, eating, or even opening his mouth to speak. He also reported his recent nausea, vomiting, and fainting episode. Dr. Chapman diagnosed him with a "severe dry

2

socket" and indicated that his jaw bone was "clearly visible." *Id*. He recommended an emergency referral to the oral surgeon, but, after leaving the room and returning, indicated that *he* would treat Plaintiff at the prison. Plaintiff again broke down and asked for a meeting with mental health. Following the meeting, "dental" had "medical staff" prescribe two Boost milks. Plaintiff also received a liquid diet tray consisting of four cups of broth and one juice. *Id*. at 9.

The next day, on July 12, 2024, Plaintiff did not receive his liquid diet trays for breakfast, lunch, or dinner. While he slept, the gauze and medicine fell out of his mouth. The dentist previously told him to get immediate medical attention if this occurs. Plaintiff told correctional officers and a nurse about the issue, but they ignored him. When he reported the denial of a liquid diet tray, however, C/O Dickerson agreed to speak with a kitchen supervisor (Kitchen Supervisors John Doe 4-6) during lunch, but said that it was up to them to decide what trays to send. Plaintiff also gave Dickerson a kite to pass along to medical requesting proper dental care, medical care, and nutrition. Dickerson returned and indicated that Nurse James refused to treat Plaintiff. This prompted Plaintiff to go out to the nurses' station and make a personal plea to Nurse James. Plaintiff was still denied treatment. Sergeant Knope, C/O Rogers, and C/O Dickerson all tried to address the dental, medical, and dietary issues, to no avail. *Id*.

Plaintiff was forced to take his medication and lock up at 3:00 p.m. *Id*. at 10. Within an hour, he became nauseous and drowsy. His head, chest, stomach, heart, and body began hurting, and he fainted again. Plaintiff's cellmate called out to Sergeant Engstrom. When she arrived, Plaintiff was sweating profusely and slurring his words as he reported his symptoms. Sergeant Engstrom said there was nothing she could do, and she left. Plaintiff asked her to call a "Code 3" medical emergency, but she ignored his request. Within five minutes, Plaintiff began vomiting, sweating, and shaking uncontrollably. He pressed the "all call" button to summon help and banged

3

on his cell door, but no one responded. He called out to an inmate porter, who said all officers were in the bubble "laughing." *Id*. When medical staff and officers finally showed up to the cell thirty minutes later, Plaintiff was passed out on the floor in a pool of sweat and vomit. Correctional officers placed him in restraints, aggressively dragged him through the vomit, and transported him on a stretcher to the health care unit (HCU). Dr. Percy Myers never saw or examined Plaintiff, but cleared him for return to his cell. *Id*.

Lieutenant Dudek then stormed into the ER and threatened to mace Plaintiff if he did not get up and return to his cell. Plaintiff could not move and begged for medical treatment. The lieutenant brought him a wheelchair and pushed him out of the HCU. Plaintiff vomited again and began to faint. As he lost consciousness, Plaintiff heard Dudek ask C/O John Doe if he wanted to "have fun" and "push this piece of shit to his cell and make sure he doesn't come out." *Id*. at 10. C/O John Doe 1-3 then pushed the unconscious Plaintiff to the R-3-B Wing, carried him up the stairs, dropped him on the floor, and left him to die. *Id*. at 11. Plaintiff's cellmate returned from dinner and found him unresponsive on the floor in a pool of vomit. When his cellmate told C/O John Doe that he did not feel safe locked up with a cellmate who was having a medical emergency, the officer told him to lock up with Plaintiff or go to disciplinary segregation. Plaintiff's cellmate chose to stay with him. *Id*.

Lieutenant Bryant eventually appeared at the cell door, and Plaintiff's cellmate reported Plaintiff's medical emergency and staff's refusal to address his medical and nutritional needs. Lieutenant Bryant instructed the inmate to keep administering care while he called for help. Moments later, Bryant and Dudek returned and escorted Plaintiff back to the HCU for treatment. Plaintiff told Bryant about the denial of a liquid diet tray and his inability to eat solid food due to his pain and infection. Bryant agreed to get Plaintiff a liquid diet tray, and he did so. *Id*.

Plaintiff was then placed under medical observation for 24 hours. He was moved to the crisis watch wing and left in a cell filled with flies and spiders and walls stained with urine, feces, and food. No one checked on him. He was offered no shower and no new clothing. He was given no liquid diet trays by the Kitchen Supervisors 4-6. Plaintiff was left to die. *Id*.

On July 13, 2024, Lieutenant Simmons and C/O Adams found Plaintiff having a panic attack and suffering from severe cramps. *Id*. at 12. They pushed him to the ER, where he began vomiting uncontrollably. Sergeant Spencer, C/O Spencer, and Lt. Simmons helped him onto a gurney, and Nurses Erin, Caitlin, Alley, and Brandy tried to help him. For almost ninety minutes, nurses worked to persuade Dr. Myers to order intravenous fluids and sodium shots. Labs revealed health problems, and he was prescribed more Boost milk and Phas-Nak to help nourish him. Plaintiff had to wait several additional days to actually receive the supplements and a liquid diet because dietary did not receive the doctor's orders. When Kitchen Supervisors Doe 4-6 finally began serving him a liquid diet on July 17, 2024, they did not give him 2,000 calories per day. *Id*.

Plaintiff filed many detailed grievances about this matter as part of his effort to fight for food and medicine. Warden John Barwick never responded to any of them by reaching out, speaking with him, or investigating his complaints. Plaintiff claims that warden turned a blind eye to the grievances and the misconduct giving rise to them. Plaintiff adds that Wexford Health Sources, Inc. has a history of lawsuits for misconduct of its employees. *Id*. at 13.

### **Preliminary Dismissals**

Plaintiff mentions numerous individuals in the statement of his claim but does not identify them as defendants in the Complaint, including Sergeant Knope, C/O Rogers, C/O Dickerson, C/O Adams, Sergeant Spencer, C/O Spencer, Lt. Bryant, Lt. Simmons, Nurse Erin, Nurse Caitlin, Nurse Alley, Nurse Brandy, and others. Therefore, the Court will not treat these individuals as

defendants, and all claims against them are considered dismissed. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties").

## Discussion

The Court designates the following claims in this *pro se* Complaint:

Count 1: Eighth Amendment claim against Defendants for exhibiting deliberate indifference to Plaintiff's medical needs following wisdom tooth surgery from July 8-17, 2024.

Count 2: Eighth Amendment claim against Defendants for denying Plaintiff adequate nutrition in the form of a liquid diet containing 2,000 calories per day following wisdom tooth surgery from July 8-17, 2024.

Count 3: Illinois negligence claim against Defendants for their inadequate post-operative care of Plaintiff from July 8-17, 2024.

Any claim mentioned in the Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### Count 1

To articulate an Eighth Amendment claim for the denial of dental care, a plaintiff must describe a sufficiently serious medical need and deliberate indifference on the part of each defendant. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). An objectively serious medical need is one that has been diagnosed as requiring treatment, one involving an obvious need for treatment, or one causing substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Plaintiff's severe dry socket, infection, pain, fainting, nausea, and related medical emergencies are sufficiently serious to support an Eighth Amendment claim. *Board v. Farnham*, 394 F.3d 469, 480 (7th Cir. 2005) (dental pain, bleeding gums, and broken teeth considered objectively serious).

Deliberate indifference occurs when a defendant "know[s] of and disregard[s] an excessive risk to inmate health." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). A delay in treatment

amounts to deliberate indifference when it unnecessarily prolongs pain or exacerbates an injury. *Gutierrez*, 111 F.3d at 1373.  Plaintiff states a claim for deliberate indifference against the medical defendants, including Dr. Chapman, Dr. Myers, and Nurse James.  According to the allegations, all three defendants delayed or denied Plaintiff necessary post-operative care following wisdom tooth surgery from July 8-17, 2024.  As a result, he suffered from a severe dry socket, infection, and prolonged pain.  Count 1 will proceed against Chapman, Myers, and James.

The allegations also articulate a claim against the non-medical prison officials, including Lieutenant Dudek, Sergeant Engstrom, and C/O John Doe 1-3.  Each officer allegedly responded to Plaintiff's pleas for medical treatment by refusing to help him obtain treatment, delaying access to treatment, and/or leaving him in his cell to die.  *Green v. Beth,* 663 F. App'x 471, 473 (7th Cir. 2016) (deliberate indifference shown by inexplicable delay of six days in treating serious dental pain and broken teeth caused by biting a rock in food).  Count 1 will proceed against Dudek, Engstrom, and Doe 1-3.

The allegations also state a claim against Warden Barwick.  Plaintiff alleges he filed numerous grievances, including emergency grievances directed to the warden, during the relevant time period (July 8-17, 2024).  In them, he described his dental and medical issues in detail.  Even so, the warden never spoke with him, investigated his complaints, or helped him secure treatment.  Plaintiff claims the warden turned a blind eye to his ongoing pain and infection.  Count 1 will receive further review against this defendant.

However, this claim will be dismissed against Wexford Health Sources, Inc.  To proceed with a claim against the private medical corporation, Plaintiff must allege that a policy, custom, or widespread practice attributable to the corporation caused a violation of his constitutional rights. *Shields v. Illinois Dept. of Corr.*, 746 F.3d 782,786 (7th Cir. 2014) (citing *Monell v. Dept. of Soc.*

7

*Servs.*, 436 U.S. 658 (1978)).  Here, Plaintiff alleges only that Wexford employed one or more medical defendants and is frequently named in lawsuits.  But because *respondeat superior* liability is not recognized under § 1983, Plaintiff cannot proceed against Wexford simply for employing wrongdoers.  *Id*.  Moreover, Wexford's tendency to get named in lawsuits is not indicative of a policy, custom, or practice that caused the constitutional injuries here.  Count 1 will be dismissed without prejudice for failure to state a claim against Wexford.

Count 1 will also be dismissed against Kitchen Supervisors John Doe 4-6 because the allegations do not suggest that these defendants were involved in decisions about Plaintiff's dental or medical care.

**Count 2**

The Eighth Amendment guarantees an inmate's right to a healthy and habitable environment that includes nutritionally adequate food prepared and served under conditions posing no immediate danger to his health.  *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1983).  Allegations of a nutritionally deficient diet can support a claim of cruel and unusual punishment.  *See Smith v. Dart*, 803 F.3d 304 (7th Cir. 2015) (citing *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir. 1996)).

Plaintiff alleges that Dr. Chapman, Dr. Myers, Nurse James, Kitchen Supervisors John Doe 4-6 all refused to provide him with a liquid diet tray and/or nutritionally adequate diet between July 8-17, 2024, resulting in weakness, loss of consciousness, and unnecessary pain, among other things.  Warden Barwick allegedly ignored or turned a blind eye to this deprivation of food that Plaintiff described in numerous grievances, including emergency grievances directed to this defendant.  Based on these allegations, Count 2 survives screening against Barwick, Chapman, Myers, James, and Kitchen Supervisors John Doe 4-6.  However, this claim will be dismissed

without prejudice against all other defendants based on their lack of personal involvement in this constitutional deprivation.

### Count 3

This Court will exercise supplemental jurisdiction over Plaintiff's negligence claim under Illinois law. *See* 28 U.S.C. § 1367(a). A plaintiff bringing a claim for negligence under Illinois law must set forth facts suggesting that each defendant owed him a duty of care, breached the duty, and the breach was the proximate cause of the plaintiff's injury and damages. *Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011) (citing *Iseberg v. Gross*, 879 N.E.2d 278 (2007)).

Plaintiff's allegations are sufficient to support a negligence claim for the denial of proper medical care following wisdom tooth surgery from July 8-17, 2024 against Dr. Chapman, Dr. Myers, Nurse James, Lt. Dudek, Sergeant Engstrom, C/O John Doe 1-3, and Warden Barwick. The allegations are also sufficient to support a negligence claim for the denial of adequate nutrition following surgery from July 8-17, 2024 against Dr. Chapman, Dr. Myers, Nurse James, Kitchen Supervisors John Doe 4-6, and Warden Barwick.

Although these negligence claims survive preliminary review, Plaintiff must provide an affidavit and medical report in compliance with Illinois state law, *i.e.*, 735 ILCS § 5/2-622, stating that "there is a reasonable and meritorious cause" for litigation. *See Young v. United States*, 942 F.3d 349 (7th Cir. 2019). He must do so before summary judgment on the merits or face dismissal of one or more of his negligence claims. Count 3 will proceed against Chapman, Myers, James, Dudek, Engstrom, John Doe 1-6, and Warden Barwick.

### Identification of Unknown Defendants

Plaintiff's claims survive screening against unidentified defendants, including C/O John Doe 1-3 and Kitchen Supervisor John Doe 4-6. These defendants must be identified with

9

particularity before the lawsuit can be served on them.  Plaintiff will have an opportunity to engage in limited discovery to ascertain the identity of each defendant.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009).  John Barwick is the current warden of Pinckneyville and is already named as a defendant in his individual capacity, and he will be added as a defendant in his official capacity for purposes of identifying the unknown defendants.  Once their names are discovered, Plaintiff must file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the Complaint.

### Request for "Restraining Order"

Plaintiff's request for a "restraining order" prohibiting all further contact with defendants is **DENIED without prejudice**.  A temporary restraining order (TRO) make take effect for up to fourteen days.  *See* FED. R. CIV. P. 65(b).  Plaintiff describes no instances of misconduct, threats of harm, or actual harm caused by the defendants in the past six months.  Plaintiff may seek a TRO or preliminary injunction by filing a separate motion pursuant to Rule 65(a) and/or (b) at any time it becomes necessary during the pending action.

### Disposition

The Complaint (Doc. 1) survives screening pursuant to 28 U.S.C. § 1915A against the following defendants:

- **COUNT 1** against **JOHN BARWICK, NATHAN CHAPMAN, PERCY MYERS, NURSE JAMES, LIEUTENANT J. DUDEK, SEGEANT ENGSTROM,** and **C/O JOHN DOE 1-3 (once identified)**, in their individual capacities.

- **COUNT 2** against **JOHN BARWICK, NATHAN CHAPMAN, PERCY MYERS, NURSE JAMES,** and **KITCHEN SUPERVISORS JOHN DOE 4-6 (once identified)**, in their individual capacities.

- **COUNT 3** against **JOHN BARWICK, NATHAN CHAPMAN, PERCY MYERS, NURSE JAMES, LIEUTENANT J. DUDEK, SERGEANT**

10

**ENGSTROM, C/O JOHN DOE 1-3 (once identified)** and **KITCHEN SUPERVISOR JOHN DOE 4-6 (once identified),** in their individual capacities.

The **CURRENT WARDEN of PINCKNEYVILLE CORRECTIONAL CENTER JOHN BARWICK (official capacity)** is **ADDED** for purposes of identifying **C/O JOHN DOE 1-3** and **KITCHEN SUPERVISOR JOHN DOE 4-6** by name and for implementing any injunctive relief ordered herein. **WEXFORD HEALTH SOURCES, INC.** is **DISMISSED without prejudice.**

The Clerk shall prepare for the **CURRENT WARDEN of PINCKNEYVILLE CORRECTIONAL CENTER (JOHN BARWICK) (individual and official capacities)** and **NATHAN CHAPMAN, PERCY MYERS, NURSE JAMES, LT. J. DUDECK, SERGEANT ENGSTROM, C/O JOHN DOE 1-3 (once identified)** and **KITCHEN SUPERVISOR JOHN DOE 4-6 (once identified)** in their individual capacities: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and SDIL-LR 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. § 1915, he will be required to pay the full amount of the costs, even though he was granted *in forma pauperis* status. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**The Clerk of Court is DIRECTED to ENTER the Court's standard HIPAA-Qualified Protective Order and TERMINATE Wexford Health Sources, Inc. as a defendant in CM/ECF.**

**IT IS SO ORDERED.**

**DATED:   April 29, 2025**               *s/ Staci M. Yandle*
                                          **STACI M. YANDLE**
                                          **United States District Judge**

### Notice to Plaintiff

Once identified, the Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** *from the date they are served with this lawsuit* to receive the Defendants' Answers, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines,

discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.